R. W. ELLIOTT *et al. v.* HONORABLE ARTHUR P. HUDSON, *Judge, et al.*
(No. 8386)

Submitted April 8, 1936. Decided April 21, 1936.

LITZ and WOODS, JUDGES, dissenting.

*Payne, Minor, Ray, Maier & Davis* and *Steptoe & Johnson*, for petitioners.

*T. C. Townsend, E. S. Bock, Ben Moore* and *Hillis Townsend*, for respondents.

MAXWELL, JUDGE:

This is a matter of original jurisdiction in prohibition to prevent the prosecution of two actions at law pending in the circuit court of Kanawha County, which actions are styled, respectively, E. S. Bock, Administrator of the personal estate of D. M. Marshall, deceased, plaintiff, against R. W. Elliott and Irvin Elliott, defendants; and E. S. Bock, administrator of the personal estate of Elzie Collins, deceased, plaintiff, against the same defendants. In the proceeding before us, the said defendants are the relators and the Honorable A. P. Hudson, Judge of said circuit court, and E. S. Bock, administrator as aforesaid, are the respondents.

The two law actions are for the wrongful death of Marshall and Collins, alleged to have been caused by the negligence of the relators in an automobile accident in Kanawha County September 2, 1935. The relators instituted this proceeding after the said circuit court had sustained demurrers both to their motion to quash the process and to their plea in abatement, interposed upon

special appearance only, and after the court had set the cases for trial on a definite date.

The relators (defendants in the actions at law) are residents of the State of North Carolina, and were not, in said actions, served with process in the State of West Virginia. They were proceeded against under the provisions of section 15 of chapter 61 of the Acts of the Legislature of West Virginia, 1935. That section provides that the operation by a non-resident or his agent of a motor vehicle on a highway of this state shall be deemed equivalent to appointment by such non-resident of the state road commissioner as his attorney upon whom may be served process in any action against such non-resident for damages caused by him in the operation of a motor vehicle on a highway in this state; that service of such process shall be made by leaving with the commissioner a copy thereof, with a fee of two dollars, and a bond in the penalty of five hundred dollars conditioned for the reimbursement of the said non-resident in event of the failure of the plaintiff to prevail in the action; and that "such service shall be sufficient service upon said non-resident, provided that notice of such service and a copy of the process shall forthwith be sent by registered mail by said commissioner to the defendant, and the defendant's return receipt is appended to the original process and filed therewith in court." The procedure thus prescribed was followed in the said two actions at law.

As basis for prohibition, in challenge of the circuit court's right to try the said two law actions, the relators draw in question the constitutionality of the said statute. They allege first that the title of the act embracing said section 15 does not meet the requirements of the West Virginia Constitution, article 6, section 30, the pertinent provision whereof reads: "No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title." Secondly, the relators urge that the act is violative of the equal privilege and immunity, and due process clauses of the Federal Constitution.

Logically, consideration must first be given to the title of the act. It reads: "AN ACT to amend chapter seventeen of the code of West Virginia one thousand nine hundred thirty-one, by adding thereto article twenty, relating to the protection of the public against reckless and irresponsible persons on public highways, the operation of motor vehicles on public highways and the financial responsibility of owners and operators of motor vehicles for damages caused by such operation and providing penalties."

In response to the attack upon the sufficiency of this title, the respondents invoke the principle that objects of an act which are incidental, auxiliary or germane to the principal object as stated in the title may be considered as embraced therein; and that the language of the title of an act should be construed in its most comprehensive and liberal sense favorable to the validity of the act, and to bring the contents thereof within the purview of the title. They cite the case of *State* v. *Mines,* 38 W. Va. 125, Syl. 10 and 11, 18 S. E. 470, which sustains the broad principle for which they contend. The problem for determination is whether the section involved is germane to the title of the act.

The relators, in support of their challenge, rely on the proposition, frequently stated in the decisions, that the title of an act must be specific enough to afford a fair and reasonable index of its contents.

In considering a problem such as is here presented, the approach must not be made from the questioned section of an act back to the title for the purpose of determining whether it may be possible to squeeze the section within the compass of some feature of the title, but the view must be taken forward from the title. *State* v. *Barns,* 119 Fla. 405, 161 So. 568. It is only under the latter concept of appraisement that the constitutional provision in respect of titles of acts is of practical value.

The purpose of such a constitutional provision is the protection of both the legislators and the public. At the outset, it is advisable that by the title of a bill pending

in a legislature, all persons shall be thereby reasonably informed of its purport—the legislator in order that he may be initially advised of the nature of the proposition which he is called upon to support or oppose; and the citizen that he may have opportunity to advocate or resist the proposed enactment. To submerge an important proposition in the body of an act with wholly inadequate reference thereto, if any, in the title, not only is subversive of the principle just discussed that all interested persons should be fairly informed of the import of pending legislation, but is destructive of the American concept of the necessity of open consideration of legislative matters. Such concealment tends to deception. And, then, after the passage of an act, the sufficiency of its title is of primary importance, both as to those who might claim advantage of its provisions, and the persons against whom it will operate. For these reasons, a title which does not furnish at least a "pointer" to a challenged provision of the act is insufficient.

The title here under consideration makes no reference to service of process on non-residents. If section 15 can be sustained, such result must be reached on the theory that the provisions of said section are incidental to the broad purposes stated in the title. The title here involved (analyzed and sub-divided) makes declaration that the ensuing act relates to (1) the protection of the public against reckless and irresponsible persons on public highways; (2) the operation of motor vehicles on public highways; (3) the financial responsibility of owners and operators of motor vehicles for damages caused by such operation and providing penalties. Those subjects pertain to the manner of the use of highways, and to the financial responsibility of persons who abuse the privilege of such use. These are substantive matters, and the words employed carry no intimation that there is also included in the act the adjective element of process against non-residents.

The subject matter of section 15 of chapter 61 of the Acts of 1935 is not only of the highest importance, but it involves an entirely new concept in the administration

of the law. Until acts of this sort came into vogue within recent years, it was not considered that a personal judgment could be taken against a non-resident tortfeasor in the absence of personal service of process on him in the state where the action was brought. Seeming necessity has prompted this class of legislation. Too often it has happened that automobilists, away from their home states, in disregard of other persons' rights, have negligently inflicted injury and escaped liability by hastening out of the state where the injury was inflicted. There was growing necessity for legislation that would render such persons amenable to justice, without placing on the injured person the probably prohibitive burden of proceeding against the wrongdoer in the state of the latter's residence. Many states, therefore, have enacted statutes similar to the provision of the West Virginia statute now under consideration. The Supreme Court of the United States has given its approval to such a statute. *Hess* v. *Pawloski,* 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091. The case involved a Massachusetts act. The Supreme Court of that state theretofore had likewise upheld the enactment. *Pawloski* v. *Hess,* 250 Mass. 22, 144 N. E. 760, 35 A. L. R. 945. Of the numerous similar acts of sister states which have come under our observation, not one has been buried in the midst of a voluminous statute on other subjects, under a title dealing with such other subjects and not mentioning the matter of process against non-resident automobilists. None of the several enactments which we have examined was entangled with other matters, but stands under a specific and definite title. We are of opinion that the dignity thus given to such acts is indicative of the importance of the subject.

We are impressed that in reading the title before us, neither a person trained in the law nor any other person would be prompted thereby to suspect that the act purported to make provision for personal judgment against non-resident operators of motor vehicles, upon service of process on the state road commissioner. True, a cryptical subject or title may be so broad and so general as to encompass the entire field pertaining to a given

topic. Such, in effect, is the position taken with reference to the title here under appraisal. We reply that in respect of the subject-matter of said section fifteen, the vice of the title lies in its very generality. It is so general that it is non-informative as to said section. There must be a limit to such generalities, else the stated constitutional requirement is without practical meaning and effect.

From these considerations, we are of opinion that this case must be aligned with other cases wherein we have held that insufficiently informative titles were not in compliance with the constitutional mandate that the object of an act "shall be expressed in the title." The verb "express" carries the implication of explicitness. "Under Article VI, section 30, Constitution, the title to a legislative enactment need not descend to particulars, but it must be broad enough to give a fair and reasonable index to all the purposes of the act." *Boggess* v. *Johnson, Treasurer*, 113 W. Va. 193, 167 S. E. 82, and cases there cited. In an earlier case, this court said: "If parts of the act, are not so correlated to the object expressed in the title as to appear to follow as a natural and legitimate complement, they cannot stand." *State* v. *Haskins*, 92 W. Va. 632, 645, 115 S. E. 720. A matter of detail might very reasonably be said to follow as a natural and legitimate complement to an enactment in respect of the operators of motor vehicles and the financial responsibility of reckless operators. But we are unable to perceive that the somewhat startling and almost revolutionary proposition of fixing personal liability on non-resident motorists is a mere incident to the subject announced in the title of the act under consideration.

We are thus led to the conclusion that the title of the act designated as chapter 61 of the Acts of the Legislature of 1935 does not include within its scope section fifteen thereof, and, therefore, under section 30 of article 6 of the State Constitution, the said section is null and void. The other sections of the act are not involved in this adjudication.

In the light of our conclusion on the constitutional question discussed, it is not necessary that we consider relators' points in respect of the federal constitution.

A writ of prohibition is awarded as prayed.

*Writ Awarded.*