THE DULING BROTHERS COMPANY *et al. v.* THE CITY OF HUNTINGTON *et al.*

(CC 589)

Submitted March 23, 1938. Decided April 9, 1938.

*Okey P. Keadle,* for plaintiffs.

*B. C. Sharitz* and *Walter L. Brown,* for defendants.

HATCHER, JUDGE:

Municipalities were authorized by Acts 1935, Chapter 68, to construct and maintain flood control systems. Pur-

suant thereto the City of Huntington has adopted a flood wall plan, submitted by engineers of the federal government, which will protect certain portions of the city subject to floods. The cost of the wall is estimated at $3,410,000.00, of which the city is to supply $410,000.00 and the federal government the balance. The city proposes to issue bonds for its share of the cost to be paid from special assessments over a number of years against the real estate within the wall. Plaintiffs, owning property therein, seek to enjoin the city from consummating the plan. The circuit court was of opinion to sustain a demurrer to the bill, and certified here its sufficiency.

Plaintiffs' brief contends that (1) the wall is a federal, not municipal, project; (2) the plan was adopted without proper notice to the public; (3) the plan is impracticable; (4) it is not of such a flood control system as was contemplated by the legislature; (5) the charges are discriminatory; (6) the proposed obligation violates the Constitution of West Virginia, Article 10, Section 8; (7) if the plan is within the Act, then the latter violates the constitution, Article 6, Section 30; (8) a provision, subjecting to the First National Bank of Huntington the reasonableness of the price agreed upon between the city and a land owner of land to be acquired for the wall, is invalid; and (9) if the plan itself is lawful, the city will violate Code, 24-2-11, by operating a public utility without having first obtained a certificate of public necessity. These contentions will be considered as enumerated.

1. The Ohio River, being navigable in West Virginia, is subject to federal control, and any flood control system along that river, within the state, would be under federal regulation. The municipalities on the river have been the chief sufferers from floods. These facts were well known by the legislature. No municipalities are excepted from the Act. Hence we must assume that despite federal regulation, the legislature intended the Ohio

River municipalities to profit by the Act wherever possible. We are therefore of opinion that the Huntington project is municipal within the Act.

2. Notice of councilmanic hearing of the plan was published in manner prescribed by the Act. The notice was not signed. Wherefore, plaintiffs' brief (hereinafter called the brief) contends that the notice was not valid. No authority is cited requiring a signature. Plaintiffs, heeding the unsigned notice, appeared at the hearing. Hence, omission of the signature did not prejudice them, and there is no showing of prejudice to others.

3. In making the assessment, the city divided the proposed intra-mural lands into three zones, namely, one which has never been flooded, one which was submerged only by the flood of 1937, the highest known to the city, and one inundated by lesser floods. The brief takes the position that the property in the first zone referred to is not benefited in any "certain and substantial" manner by the wall and that charges upon that property for the wall will be illegal. A portion of the land within this zone was surrounded by flood waters in 1937, and the remaining portion is within three feet of the height reached by that flood. The wall is to be three feet above that height for the express purpose of affording greater protection to those two portions from flood waters. The position taken assumes that the flood of 1937 will not likely be equalled and will never be exceeded—an unsupported assumption. Plaintiffs' property is not within this zone; without precluding those having property there, we are of opinion that no abuse of discretion is apparent, but that the protection afforded this zone from possible floods is sufficiently beneficial to uphold the proposed assessment. "While an assessment can be made only against such property as will be specially benefited by the work or improvement in question * * * it is not necessary that the benefits shall be immediate or direct, (or) that the property shall receive absolute protection from overflow * * * . The legislature (city council) may

itself determine the lands to be benefited; and its discretion and determination will not be controlled or interfered with by the courts, unless there is a manifest and arbitrary abuse of power * * * ." 36 C. J., Levees and Flood Control, sec. 56.

The brief says further that real estate owned by the State, County and City is within the proposed wall, and charges thereon are uncollectible. This statement is theoretically correct, but practically inconclusive. We are loath to believe that the State, County or City would not share the cost of protecting its property from flood menace. However, if the State, County and City should all shirk this responsibility, their evasion is not of enough taxable moment to stay the project.

4 and 6. The brief contends that the proposed plan is not within the legislative contemplation, because, as the brief says, the wall will not be paid for "by means of tolls, fees, rents or charges other than taxation" as the Act requires of the public works therein mentioned, but will depend on taxation, a dependency forbidden by the Act. In other words, the contention is that the Act authorizes only such a flood control system as will be inherently revenue-producing. The Act lists a number of permissible public works of which some could be self-supporting, but others could not be. For example, the Act permits the construction of drainage systems, and the pavement or repavement of streets and alleys, which projects are not inherently revenue-producing. No practical method is suggested, and we conceive of none, whereby our municipalities on the Ohio River could pay the cost of a flood control system by "tolls, fees, rents or charges" other than special assessments. So we can not agree with the brief. The requirement of the Act that public works constructed thereunder shall be self-supporting, must be held to be inoperative where the work, like a flood wall, is incapable of producing an operating revenue.

The word "charge" is susceptible of several meanings,

one of which is a special assessment on land. *Darling* v. *Rogers* (N. Y.), 22 Wend. 483, 491; *McGuire* v. *Brockman,* 58 Mo. App. 307; 5 C. J., Assessments, sec. 3; Page and Jones, Taxation by Assessment, secs. 4, 7, and 15. The word must be given that definition here in order to effectuate the legislative permission to construct a flood control system. See generally, *Mack* v. *Price,* 40 W. Va. 324, 326, 21 S. E. 1012. A local assessment is to pay the expenses of an improvement designed to benefit the property of the payor. Taxation, in its usual application, is to pay the expenses of a government designed to benefit the payor as a member of organized society. From the one payment, the benefit to the payor is special; from the other, general. Consequently, while an assessment for a local improvement is an exercise of the taxing power, the assessment is generally not considered taxation, within constitutional and statutory restrictions of that power. *Munson* v. *Board of Com'rs of Levee District,* 43 La. 15, 8 So. 906; *Page and Jones, supra,* secs. 35, 39 and 42, 45; Cooley, Taxation (4th Ed.), sec. 31; 36 C. J., *supra,* sec. 55. When the legislature authorized the construction of flood control systems, we must assume its knowledge that flood walls are common means of flood restraint. We must also assume legislative knowledge that the usual method of paying the costs of a flood wall is by special assessments, and that this method was perhaps the only one our Ohio River municipalities could expect to employ. For the legislature, despite this knowledge, to have intended the word *taxation* to preclude such assessments, would evidence a vagary which practical construction cannot credit.

5. The indicia of assessment discrimination alleged in the brief are (a) charges against real property only; (b) charges against property within the flood wall only; and (e) different rates for the different zones, within the wall. When floods threaten, personal property can be moved. Wherefore, it is regarded as not benefited by a flood control system to the extent that it should be assessed therefor. Cooley, *supra,* sec. 570. "Assessments

are usually levied directly and exclusively on the real estate benefited." 36 C. J., *supra*, sec. 57. The zoning rates here are apportioned to the danger of the several zones from flood. Rates are generally fixed "with direct reference to such benefit as the property may receive therefrom." *Munson* v. *Board of Com'rs of Levee District, supra.* An assessment basically similar was approved in *Memphis Land & Timber Co.* v. *Levee District,* 64 Ark. 258, 42 S. W. 763. We discern no illegal discrimination in the assessments.

7. The brief contends that the title of the Act does not embrace the theory upon which the proposed assessments will be made, as required by Constitution, Article 6, Section 30. The title, in part, is "An Act to authorize municipalities to establish * * * municipal public works and to defray the costs of such construction * * * by issuing revenue bonds, secured by and payable from the revenues of such systems; to authorize charges for the use of such municipal works and to provide for the collection of the same." The principal object of the Act was to authorize municipal public works. This object is clearly expressed, and being so, words descriptive of details ancillary thereto should not be narrowly defined. *Brewer* v. *Point Pleasant,* 114 W. Va. 572, 575-6, 172 S. E. 717. The word "use" is said to be "one of the most comprehensive words in our language" and at law may mean service or benefit. 66 C. J. 65, *et seq.; National Surety Co.* v. *Jarrett,* 95 W. Va. 420, 428, 121 S. E. 291, 36 A. L. R. 1171. Consequently, the title may be held to contemplate special assessments (charges) for the service or benefit (use) from a flood wall.

8. The brief contends that the proposed submission to the First Huntington National Bank, of the reasonableness of an agreed price for land needed for the project, is a delegation of power not authorized by the Act, and is invalid. Section three of the Act empowers a municipality to place the construction of a public work under the supervision of a "board, commission or committee." The Bank may be regarded as a committee under the Act,

and the Bank's power in relation to the price of land an incident of supervision. The Bank's decision is not final. In case agreement cannot be reached on a price which the Bank will approve, the ordinance provides that the city shall then resort to condemnation, a salutary provision.

9. Code, 24-2-11, upon which is based the last contention of the brief, provides that no public utility, person or corporation, engaged in any public service "except vehicular service upon streets and roads" (24-2-1) shall begin a construction until after obtaining a certificate of public convenience, etc. from the public service commission. While the term *public corporation* is broad enough to include a municipal corporation, the context of the term shows plainly that it was not intended to do so. *Bluefield* v. *Commission*, 94 W. Va. 334, 118 S. E. 542. We do not overlook the provision of Section 18 of the Act that an interested party dissatisfied with rates imposed for the service of public works may appeal to the commission. That bare provision is the only one of the Act relating to the commission. Even if the provision applies to special assessments (which we do not now concede) it cannot be extended, as the brief contends, because such extension is expressly excluded by Section 26 of the Act, which declares "This act shall, without reference to any other statute, be deemed full authority for the construction * * * of the works herein provided for * * * ."

The ruling is affirmed.

*Ruling affirmed.*